NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., | |
| Plaintiff, | **OPINION** |
| v. | Civ. No. 08-3836 (WHW) |
| CANDOR CONSTRUCTION GROUP, INC., BEDMINSTER MEDICAL PLAZA LLC, AND DENNIS ULVERSOY, | |
| Defendants. | |

**Walls, Senior District Judge**

The Court granted default judgment to plaintiff JPMorgan Chase Bank, N.A. ("JPMC") and held a hearing at which JPMC presented evidence on damages. JPMC seeks $1,818,429.16 in damages and requests that the Court impose a constructive trust on certain property in Bedminster, New Jersey owned by defendant Bedminster Medical Plaza, LLC. The Court grants plaintiff's request for damages. The Court denies plaintiff's request for the imposition of a constructive trust.

**FACTUAL AND PROCEDURAL HISTORY**

In 2006 and 2007, JPMC hired defendant Candor Construction Group, Inc. ("Candor") as a general contractor on branch and office construction projects in New Jersey. (Compl. ¶ 1.) JPMC and Candor entered into a general contractor agreement for each JPMC site which obligated JPMC to pay the cost for completing construction on each site by way of separate progress requisition payments made at intermittent stages of construction. (Compl. ¶¶ 10-11.) To receive each progress payment, Candor was required to submit an Application for

**NOT FOR PUBLICATION**

Payment which included a certification by Candor that the work covered by the Application for Payment was completed. (Compl. ¶ 12.) With the Application for Payment, Candor was also required to certify and warrant that "all bills for labor, materials, licenses and other expenses for which [JPMC] might be liable or for which a lien might be filed by a Subcontractor or any tier [contractor] retained directly or indirectly by [Candor] to furnish labor or materials for work covered under said Requisition will be fully satisfied and paid promptly after contractor's receipt of payment." (Compl. ¶¶ 13, 41, 49, 57, 65.)

JPMC alleges that Candor failed to pay subcontractors from the progress payments made by JPMC, used the payments for purposes unrelated to the construction projects, and continued to request progress payments based on false certifications that subcontractors would be promptly paid. (Compl. ¶ 15.) JPMC also alleges that Candor and its president, defendant Dennis Ulversoy, used the progress payments to finance the purchase of, pay mortgage payments on, and maintain an investment property located in Bedminster, New Jersey. (Compl. ¶ 132.) The property is owned by defendant Bedminster Medical Plaza, LLC, which is allegedly controlled by defendant Ulversoy. (Compl. ¶¶ 132-133.)

JPMC terminated Candor for cause and, on July 28, 2008, filed this action for compensatory damages, punitive damages, and imposition of a constructive trust on the Property. On April 13, 2010, this Court granted default judgment to JPMC. On June 8, 2010, this Court held a hearing to determine damages and to decide whether to grant JPMC's request to impose a constructive trust on the Property.

NOT FOR PUBLICATION

## STANDARD OF REVIEW

In awarding default judgment, courts accept as true the well-pleaded factual allegations of the complaint, but need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 Wright, et al., Federal Practice & Procedure § 2688 (2d ed. 1983)). A court must "conduct its own inquiry 'in order to ascertain the amount of damages with reasonable certainty.'" Int'l Assoc. of Heat & Frost Insulators v. S. Jersey Insulation Servs., No. 05-cv-3143, 2007 WL 276137, at *1 (D.N.J. Jan. 26, 2007) (quoting In re Indus. Diamonds, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)). "Under New Jersey law, once a plaintiff has established an injury, it need prove the amount of damages only to a reasonable degree of certainty." Video Pipeline, Inc. v. Buena Vista Home Entm't Inc., 275 F. Supp. 2d 543, 566 (D.N.J. 2003).

## DISCUSSION

I.  **Plaintiff's Request for Damages**

At the June 8, 2010 hearing on damages, Stephen Marr, Market Director of Construction for JPMC, testified that he was in charge of the development of all Chase branches in the northeast market. (Tr. 5:4-5.) He stated that Candor was the general contractor for the construction of four Chase branches that remain relevant to this action: Cranford, Morristown, Hamilton Square, and West Freehold. (Tr. 5:8-23, 8:1-2.) For each branch, JPMC and Chase executed an American Institute of Architecture (AIA) contract, which is a standard form contract. (Tr. 5:19-23; 6:5-7.) Pursuant to the AIA contract, JPMC would make progress payments to Candor during the course of a project.

**NOT FOR PUBLICATION**

Mr. Marr testified that JPMC sustained $1,818,429.16 in damages as a result of Candor's default. (Tr. 16:11-15.) He explained that he arrived at this total damages amount by adding together the losses suffered by JPMC on each of the four relevant projects.

Mr. Marr began his damages testimony by discussing the damages incurred by JPMC on the Freehold project. He used Exhibit 2 as a reference during his testimony, which is a chart entitled "Candor Subcontractor Lien and Invoice Spreadsheet." Exhibit 2 shows that JPMC paid $1,382,608.14 to various subcontractors for their work on the Freehold project and that JPMC owed Candor a balance of $518,558.72 under the AIA contact. Mr. Marr stated that the contract damages suffered by JPMC on the Freehold project were the difference between the amount JPMC paid to subcontractors for their work on the project and the remaining amount that JPMC owed Candor under the AIA contract. (Tr. 17:11-12.) Exhibit 2 shows that these damages totaled $864,049.02, which reflects the additional monies JPMC paid out to subcontractors that it would not have paid out to Candor under the AIA contract.

Mr. Marr next turned to the Cranford project and used Exhibit 3, a chart entitled "Crandford Candor Subcontractor Lien and Invoice Spreadsheet", as a reference. Exhibit 3 lists the subcontractors on the Cranford project, the amount of liens, and the amount of money paid by JPMC to Candor. (Tr. 18:18-21.) Exhibit 3 shows that JPMC's contract damages on the Cranford project were $420,977.80.

Mr. Marr then moved to the Morristown project. He testified that Exhibit 4, a chart entitled "Morristown Candor Subcontractor Lien and Invoice Spreadsheet," indicates the contract amount, amount paid to date by Candor and the subcontractor Liens on the Morristown

**NOT FOR PUBLICATION**

project. (Tr. 21:25-22:1-2.) Exhibit 4 demonstrates that JMPC's contract damages on the Morristown Project were $220,159.25.

Lastly, Mr. Marr testified about Hamilton Square project. He stated that Exhibit 5, a chart entitled "Hamilton Square Candor Subcontractor Lien and Invoice Spreadsheet", is a summary sheet for the Hamilton Square Project. (Tr. 24:11-12.) Exhibit 5 shows that JPMC's contract damages for the Hamilton Square Project were $313,243.21.

Mr. Marr testified that the backup information supporting the summary charts (Exhibits 2 through 5) were contained in Exhibits 6 and 7, which are binders containing the relevant contracts, applications for payments, lien information, invoices and proofs of payment for each of the projects. (Tr. 24:18-24.) Mr. Marr testified that JPMC asked Candor more than two years ago for an accounting of the progress payments that were made, but had not received a response. (Tr. 25:15-23.)

On cross-examination, counsel for Candor elicited testimony from Mr. Marr that JPMC had not paid off all the subcontractor liens listed as damages on the summary sheets. (Tr. 26:18-22.) Candor's counsel then argued to the Court that unsatisfied liens do not constitute damages. The Court disagreed, stating at the hearing: "[T]hat I didn't actually pay [the lien] doesn't excuse the defendant, who put [the plaintiff] in that position, for being responsible for the amount of the lien. And that's how I base my analysis. And if you can come up with some good case law that says that analysis is faulty, I will be very glad to change it, change my analysis." (Tr. 38:17-22.) Candor's counsel did not refer to any case law challenging the Court's analysis. Candor's counsel also argued that JPMC had an obligation, as part of its duty to mitigate

**NOT FOR PUBLICATION**

damages, to sit down with the subcontractors and try to negotiate payment on the subcontractors' liens, rather than paying them the full amount of what they claimed to be owed. (Tr. 43:13-16.) Candor's counsel conceded that he did not have case law to substantiate that theory (Tr. 44:1-2.)

The Court finds that JPMC has produced competent evidence, in the form of Mr. Marr's testimony, aided by Exhibits 2 through 5 and the supporting documentation made available to the Court, that its damages in this action total $1,818,429.68. The Court grants damages to JPMC in this amount.

## II.  Imposition of Constructive Trust

Kenneth Terzo, a vice president and senior construction project manager at JPMC, also testified at the damages hearing. Mr. Terzo was involved in the construction projects at Cranford and Woodbridge. He testified that he learned that JPMC's progress payments to Candor were being used to purchase a property in Bedminster. (Tr. 30:4-17.) The Court sustained a hearsay objection to this testimony. JPMC's counsel stated that he was "stonewalled" in discovery when he attempted to obtain documents showing that JPMC's progress payments to Candor were not used to pay subcontractors, and he asked the Court to draw the strongest possible adverse inference. (Tr. 32:2-33:3.)

Candor's counsel countered that money flowed not from Candor into Bedminster, but from Bedminster into Candor "to try to keep Candor afloat." (Tr. 39:23-40:1.)

The New Jersey Supreme Court has "caution[ed] courts generally that a constructive trust is a powerful tool to be used only when the equities of a given case clearly warrant it." Flanigan v. Munson, 175 N.J. 591, 611 (2003). In New Jersey, courts look at

NOT FOR PUBLICATION

whether (1) "a party committed 'a wrongful act" and (2) whether "the wrongful act . . . result[ed] in a transfer or conversion of property that unjustly enriches the recipient." Id. at 608. In this context, a wrongful act "includes, but is not limited to, 'fraud, mistake, undue influence, or breach of a confidential relationship, which has resulted in a transfer of property.'" Dime Sav. Bank of N.Y. v. Riethemer, No. A-2323-07T2, 2009 N.J Super. Unpub. LEXIS 211, at *20 (N.J. Super. Ct. App. Div. Jan. 2, 2009) (quoting D'Ippolito v. Castoro, 51 N.J. 584, 242 A.2d 617, 619 (N.J. 1968)).

The Court finds that JPMC has not shown that the "powerful tool" of a constructive trust is warranted. JPMC has not shown that its progress payments were used to finance the purchase of the Property. In this instance, the Court will not impose a constructive trust on the Property.

## CONCLUSION

The Court awards JPMC its requested amount of $1,818,429.16 in damages. The Court denies JPMC's request to impose a constructive trust on the Property.

August 12th, 2010                                       s/William H. Walls
                                                        United States Senior District Judge